**Gilbert Salas CORONADO, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17459.**

United States Court of Appeals
Fifth Circuit.

May 13, 1959.

Rehearing Denied June 26, 1959.

Clyde W. Woody, Houston, Tex., for appellant.

Dan Kennerly, Asst. U. S. Atty., William B. Butler, U. S. Atty., Houston, Tex., for appellee.

Before JONES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This appeal is from a conviction under the federal narcotics laws. Gilbert Salas Coronado, appellant, was indicted on two counts: (1) for acquiring and facilitating the transportation and concealment after importation of heroin in violation of 21 U.S.C.A. § 174;[1] (2) for selling heroin in violation of 26 U.S.C.A. § 4705.[2] The jury found him guilty on the first count, but not guilty on the second count. We affirm the conviction.

January 28, 1958, Henry Sutton, a special employee of the Federal Bureau of Narcotics, met Coronado in Houston, Texas. They drove to a church on Jensen Drive and parked. Coronado got out of the car and disappeared for about fifteen minutes. When he returned he told Sutton: "My man told me where they are." He got back in the car and directed Sutton to drive to a certain drive-in restaurant. There, Coronado again got out of the car, walked over to a tree, picked up a package, and gave the package to Sutton. Later, Sutton delivered this package to agents of the Bureau of Narcotics. It contained four cellophane papers of heroin.

Two federal agents, a chemist, and Sutton testified for the government.

Sutton testified that he met Coronado for the purpose of having him obtain heroin; they had discussed the matter the day before. Narcotics agents had suspected Coronado for some time and had tried, unsuccessfully, to buy heroin from him on many occasions. Federal agents furnished Sutton one hundred dollars to pay for the heroin and followed Sutton from the moment he met Coronado until he turned over the heroin.

■ (1) Appellant contends, first, that he was acting only as a purchasing agent for Sutton who was buying for the government, so that appellant was nothing more than a sub-agent of the government, as was decided in Henderson v. United States, 5 Cir., 1956, 261 F.2d 909. Henderson and related cases [3] held that if the accused acted as a purchasing agent for the buyer of narcotics and did not act as or represent the seller, he cannot be convicted of making an illegal sale of narcotics. The question in Henderson and similar cases, however, is whether the accused acted as a participant in the sale on behalf of the buyer or on behalf of the seller. Schnautz v. United States, 5 Cir., 1959, 263 F.2d 525. The defense presupposes a sale. United States v. Moses, 3 Cir., 1955, 220 F.2d 166. It does not apply in the instant case since Coronado was not convicted of selling narcotics. He was convicted of unlawfully acquiring and facilitating the transportation and concealment of heroin. There is no question therefore as to whether Coronado bought the heroin as the government's agent.

1. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000." Title 21 U.S.C.A. § 174.

2. "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." Title 26 U.S.C.A. Ch. 39, § 4705.

3. Adams v. United States, 5 Cir., 1955, 220 F.2d 297; United States v. Sawyer, 3 Cir., 1954, 210 F.2d 169; Lambert v. United States, 5 Cir., 1939, 101 F.2d 960. See also United States v. Valdes, 2 Cir., 1956, 229 F.2d 145; Bruno v. United States, 9 Cir., 1958, 259 F.2d 8.

(2) The second defense centers on entrapment. Appellant contends that as a matter of law the evidence showed that he was entrapped. But in any event, the argument runs, the district judge erred in refusing to hear evidence of entrapment out of the presence of the jury.

As to the first aspect of this defense, we find that there was sufficient evidence in the record to require submission of the issue of entrapment to the jury. The issue was submitted to the jury on a fair and adequate charge to which there was no objection on the part of appellant. There was no error in the trial judge's denial of a motion for acquittal on the ground of entrapment.

The other argument on entrapment is that defendant's case will suffer great harm and prejudice, if the whole issue of entrapment is presented to the jury. This is undeniable—at least in many cases of alleged entrapment. But it is a detriment to the defendant inherent in the defense of entrapment. There is an irreconcilable conflict between a defendant denying that he committed the acts necessary to prove the government's case and a defendant admitting that he did the acts but was an unwary innocent caught in a trap set by agents provocateurs. There is no way of reconciling the conflict, as long as entrapment is a question of fact for the jury. The law is settled that entrapment is a question for the jury to decide, unless the evidence is so clear and convincing that it can be passed on by the trial judge as a matter of law. Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Accardi v. United States, 5 Cir., 1958, 257 F.2d 168.

It is up to the defendant to weigh the advantages of the defense of entrapment against the inherent disadvantages. But he cannot have his cake and eat it too. He cannot take away from the jury its function of passing on the factual issue of entrapment, on the remote chance that the court will hold that there was entrapment as a matter of law; then, if he should fail, have a second trial of the same issue using the same witnesses and going over the same ground before the jury.

Rule 29 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. allows a trial judge to grant a motion for acquittal "if the evidence is insufficient to sustain a conviction". The spirit of the Rule seems to be that both judge and jury should hear the evidence at the same time. Then, but only then, the court must decide as a matter of law that the evidence was insufficient; or, as in this case, that evidence of entrapment was sufficient for the case to go to the jury.

Even in motions to suppress evidence the court may carry the motion along with the case. Blake v. United States, 5 Cir., 1944, 141 F.2d 953. When such a motion is made, it may be necessary for the defendant to prove that he is owner or possessor of the evidence. Of course he would prefer not to do so, if it is contraband. He had no choice, however. Thus, in Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629, 630, the Court said:

> "Men may wince at admitting that they were the owners, or in possession, of contraband property; may wish at once to secure the remedies of a possessor, and avoid the perils of the part; but equivocation will not serve. If they come as victims, they must take on that role, with enough detail to cast them without question."

(3) Appellant argues that the court erred in denying his motion for a mistrial based on the government's putting his character in issue after he had made it clear that he would not take the stand. This is a short answer. On each occasion that government counsel attempted to introduce such evidence the defendant objected and the court refused to permit the evidence to be introduced.

Judgment is

Affirmed.