Lloyd G. WASHINGTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17911.

United States Court of Appeals Fifth Circuit.

March 11, 1960.

* Otarion, Inc., 54 F.T.C.D. 382 (1957).

John Bradshaw, Bradshaw & Bradshaw, Houston, Tex., for appellant.

William B. Butler, U. S. Atty., Monroe Northrop, Asst. U. S. Atty., Houston, Tex., for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Lloyd G. Washington, appellant, was convicted on all six counts of an indictment [1] based on the sale of heroin on two occasions. We affirm.

On February 18, 1959, at 5:30 p. m., Cleophus Robinson, an agent of the Federal Bureau of Narcotics, and Booker T. Washington (no relation of the defendant), a "special employee" of the Bureau, drove to the defendant's house. Booker and Lloyd Washington engaged in a short conversation, then Robinson joined the two men. According to Robinson, he was introduced as the man who wanted the "stuff". According to the defendant, however, it was Booker Washington who appeared to be ill, in great pain, and in need of heroin. Booker asked Lloyd to do him a favor by picking up a package (of heroin) he could not pick up himself because he owed money to the man who had the package. Lloyd testified that he felt sorry for Booker Washington and that it had never occurred to him to obtain narcotics until the special employee planted the idea in his mind. The defendant said that he was emotionally upset at the time because his mother had died a short time before his conversation with Booker Washington and Robinson. He contends that he had never used, bought, or sold narcotics. He has never been convicted of any narcotics offense or of any other crime. Robinson, however, testified that Lloyd Washington started negotiating the sale of heroin as soon as the subject was broached, told Robinson how much the heroin would cost, and appeared to be the seller or at least acting on behalf of the seller. Either the special employee or Robinson gave the defendant government money to obtain the package. About four hours later, at 10:00 P.M., Lloyd Washington delivered the package. He testified that he made no profit on the transaction.

The second transaction took place February 25, 1959. The special employee called the defendant from a public telephone asking him to obtain more heroin. Lloyd Washington contends that at first he refused to buy any more narcotics but was finally persuaded to go back to the source, obtain another package, and deliver it either to the special employee or to Robinson. Again, the agents gave the defendant the purchase price of the heroin. The defendant testified that he bought narcotics on this occasion only because the special employee was ill.

Robinson's testimony conflicts on every material point. He stated that he over-

---

I. Three counts of the indictment concern a transaction that took place on February 18, 1959. The other three involve a transaction on February 25, 1959. The counts are the same for each transaction except for the date and the amount of heroin involved: (1) receiving and facilitating the transportation and conceal- ment of heroin, knowing it to be illegally imported, in violation of 21 U.S.C.A. § 174; (2) selling and distributing the heroin not in or from the stamped packages in violation of 26 U.S.C.A. § 4704 (a); and (3) selling the heroin not pursuant to a written order in violation of 26 U.S.C.A. § 4705(a).

heard the telephone conversation and that it went not at all as the defendant testified. Instead, Robinson said that the defendant complained about his buying heroin from one Manuel. The two Washingtons agreed on the purchase of four capsules of heroin. When Lloyd Washington delivered the heroin, however, Booker Washington told him that he had more money than was needed for the purchase of the four capsules. The defendant promptly produced five more capsules. The sale was completed therefore for nine capsules. Robinson pointed out that the heroin was in poor condition and inquired as to when the defendant would have "better stuff". According to Robinson, the defendant told him that he could have anything he wanted the next day.

John L. Kelly, in charge of the Federal Narcotics office at Houston, Texas, and a chemist for the Alcohol and Tobacco tax division, observed the second transaction between the defendant and Robinson. Robinson turned over both packages of heroin to Kelly and, later, chemists identified both the packages as having contained heroin.

## I.

Appellant argues vigorously that he was entrapped.

■ The Supreme Court gave the doctrine of entrapment careful consideration in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. In 1958 the Supreme Court again fully considered the defense of entrapment. Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, rehearing denied 357 U.S. 933, 78 S.Ct. 1367, 2 L.Ed.2d 1375. Under Sorrells, Sherman, and Masciale, the issue of entrapment is a question for the jury, unless as a matter of law the defendant

has established beyond a reasonable doubt that he was entrapped. See Accardi v. United States, 5 Cir., 1958, 257 F.2d 168, certiorari denied 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112; Coronado v. United States, 5 Cir., 1959, 266 F.2d 719. In determining if there has been entrapment as a matter of law this Court has considered not only the predisposition of the accused but has weighed also the conduct of the government agents. Accardi v. United States, supra.

■ In the instant case we cannot find entrapment as a matter of law.[2] There was sufficient evidence of the predisposition (character and general intention of the accused) to submit the case to the jury. Thus, there was evidence that Washington had made prior sales to narcotics addicts. He showed no hesitancy in negotiating a sale of heroin immediately upon being introduced to Robinson. He was willing to arrange a sale of heroin over the telephone. And this second sale was a sale of heroin in Washington's possession, not of heroin he was to obtain. Lloyd Washington complained that he was not getting enough business from Robinson and Booker Washington; he objected to their buying $150 of heroin from another source when he could handle an order for this amount. Lloyd Washington was eager, not reluctant. He came in his own car to meet Booker Washington and Robinson. He jumped at the chance of selling more heroin than he was asked to sell when he heard that Robinson had more money; pushing nine capsules instead of the four originally requested. He agreed to furnish them anything they wanted the next day. Washington's ready acquiescence and affirmative acts to promote the sale of heroin distinguish the instant case from the cases in which it has been held that the defendant was entrapped.

Undoubtedly, government agents set a trap for the defendant. But here, the

---

**2.** "Rarely do the United States Courts of Appeal reverse on the ground of entrapment." Donnelly, Judicial Control of Informants, 60 Yale L.J. 1091, 1104 (1951). "The orthodox viewpoint of the courts that the jury should determine the question seems more sound than the minority contention that the judge should so rule." Comment, 16 Wash. & Lee L.Rev. 72, 78 (1959).

jury could find that the agents trapped an unwary criminal, not an unwary innocent.

## II.

Appellee contends that the failure of the government to call the special employee denied him the right of confrontation; that because of the denial of this right the district court should have granted his motion for acquittal.

■ The government is not required to call all witnesses who are competent to testify. Ferrari v. United States, 9 Cir., 1957, 244 F.2d 132, certiorari denied Darneille v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78. The principle applies even to a special agent or informer who participated in the transaction. Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, rehearing denied 357 U.S. 933, 78 S.Ct. 1367, 2 L.Ed. 2d 1375; Dear Check Quong v. United States, 1947, 82 U.S.App.D.C. 8, 160 F.2d 251. Cf. United States v. Colletti, 2 Cir., 1957, 245 F.2d 781; Ferrari v. United States, 9 Cir., 1957, 244 F.2d 132.

## III.

Washington contends that he was only a purchasing agent for Robinson or the special employee, citing Henderson v. United States, 5 Cir., 1958, 261 F.2d 909 and Adams v. United States, 5 Cir., 1955, 220 F.2d 297. We consider that the facts in those cases are so different from the facts in the instant case that they cannot be considered as authority for the appellant's position.

■ In the first place, counts one and four of the indictment in this case charge Washington with receiving, concealing, and facilitating the transportation of narcotics. The defense that Washington was only a purchasing agent does not apply to this part of the conviction. Coronado v. United States, 5 Cir., 1959, 266 F.2d 719. Second, we cannot say, as this Court said in Henderson, that the defendant was entrapped. Nor, finally, can we say, as a matter of law, that the evidence showed Washington was acting only as a purchasing agent and not as a seller. Washington negotiated with Robinson from the position of a seller. Thus, Washington (1) complained about Robinson purchasing from another seller; (2) sold nine capsules when only four were requested; (3) admitted that he had made a mistake in "cutting" the heroin; (4) tried to obtain another sale by stating that he could handle a $150 purchase and could get anything Robinson wanted the next day. Reasonable minds could certainly have inferred from this testimony and other evidence that Washington was more than a mere conduit or purchasing agent of the special employee.

## IV.

■ Washington's final complaint is that the court erred in permitting Robinson to testify, over objections, that he had been told by several people that he could purchase narcotics from Washington. There is no merit in this contention. Once the defense of entrapment has been raised, it is proper to inquire into the reputation of the defendant to determine his predisposition to commit the offense or to inquire into the reasonableness of the officer's conduct. Sherman v. United States, supra; Sorrells v. United States, supra; Accardi v. United States, supra; Mitchell v. United States, 10 Cir., 1944, 143 F.2d 953. The trial judge properly instructed the jury to consider such testimony only for the limited purpose of determining if Robinson had good cause to believe that Washington was trafficking in narcotics. There was no objection to the charge. The testimony was properly admissible for this limited purpose.

Judgment is affirmed.