UNITED STATES of America, Plaintiff-Appellee,

v.

Albert Keith WEBSTER, Defendant-Appellant.

No. 79–5013.

United States Court of Appeals, Fifth Circuit.

July 2, 1981.

ITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, and THOMAS A. CLARK, Circuit Judges.*

HILL, Circuit Judge:

When the defendant in a criminal case adequately raises the affirmative defense of entrapment, the government has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime charged. *United States v. Dickens*, 524 F.2d 441, 444 (5th Cir. 1975). This case presents us with an opportunity to reconsider the long-standing rule of this Circuit permitting introduction of out-of-court statements about the defendant's reputation and prior criminal conduct in cases where the issue of entrapment has been raised. Despite the fact that no other Circuit has seen fit to recognize such an exception to the rule against hearsay,[1] this rule has survived in our Court for more than a decade. It has not, however, gone unquestioned. In *United States v. Daniels*, 572 F.2d 535, 539 (5th Cir. 1978), we pointed out that permitting the use of double level hearsay based on information originally supplied by an unnamed source presented the possibility of grave abuse, unjustifiably penalizing the defendant for raising the defense of entrapment and creating a serious obstacle to the accused's right to confront the witnesses against him. The panel concluded that it was, however, barred by previous Fifth Circuit precedent. In the present case the panel, in its now-vacated opinion, recognized the logic of the view of other circuits but properly recognized that it was bound by our precedents, *United States v. Webster*, 606 F.2d 581 (5th Cir. 1979). Today we hold that hearsay evidence is only admissible in an entrapment case under the usual rules relating to hearsay, so that hearsay may not be introduced as evidence of predisposition. Only in spe-

Charles I. Poole, Miami, Fla. (Court-appointed), for defendant-appellant.

Samuel J. Smargon, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, BROWN, COLEMAN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POL-

---

* JERRE S. WILLIAMS, J., did not participate in this decision.

1. Of the five circuits that have considered the issue, all have held that hearsay is not admissible to prove predisposition. *See United States v. McClain*, 531 F.2d 431, 435 (9th Cir.), *cert. denied*, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976); *United States v. Ambrose*, 483 F.2d 742, 752 (6th Cir. 1973); *United States v. Johnston*, 426 F.2d 112, 114 (7th Cir. 1970); *United States v. Catanzaro*, 407 F.2d 998, 1001 (3d Cir. 1969); *Whiting v. United States*, 296 F.2d 512, 517 (1st Cir. 1961).

cial circumstances may the government prove what its agents have been told about the defendant as evidence of good faith, reasonableness or proper motive of the government and then only to rebut contrary assertions by the defendant. To the extent our prior cases are to the contrary, they are overruled.

## I. Facts

The facts are not complex. Appellant Webster unwittingly became involved with a woman who was a government informant. With her help, Webster sold cocaine to an undercover DEA agent. Webster was charged with two counts of distributing cocaine and two counts of possessing cocaine with the intent to distribute the same. At trial, his sole defense was entrapment. He attempted to prove that he was introduced to the undercover agent by the female informant and that it was because of her importunings that he did the illegal acts. In rebuttal, the prosecution argued that Webster was not an innocent dupe who was trapped into breaking the law by the government. In support of its argument, the prosecution put on the stand a DEA agent who testified that a few months before the arrest he had been told by a reliable informant that he had purchased cocaine from Webster on several occasions. Defense counsel's objections to this testimony on the ground that it was hearsay were overruled. Webster was convicted on all four counts. On appeal, the convictions were affirmed. *United States v. Webster, supra.*

**2.** *But see Sherman v. United States,* 356 U.S. 369, 380, 78 S.Ct. 819, 824, 2 L.Ed.2d 848 (1958) (Frankfurter, J., concurring in result); *Sorrells v. United States,* 287 U.S. 435, 458, 53 S.Ct. 210, 218, 77 L.Ed. 413 (Roberts, J.).

**3.** Since the defense of entrapment was first recognized in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); *see* note 1 *supra,* the Court has been split on whether the focus of the inquiry should be on defendant's predisposition or on the conduct of the government agent.

A majority of the court in both *Sorrells* and *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), appeared to subscribe to what Justice Stewart has called the "subjective" approach, *United States v.*

## II. Entrapment

First recognized by the Supreme Court in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the defense of entrapment is "virtually unique to the criminal jurisprudence of the United States," G. Fletcher, *Rethinking Criminal Law,* § 7.3.B, at 541 (1978); *See* Mikell, *The Federal Courts,* 90 U.Pa.L.Rev. 245, 246 (1942). The justification for the defense is "that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense, but was induced to commit them by the Government." [2] *United States v. Russell,* 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d·366 (1973). Three major Supreme Court cases, decided over a span of 41 years, establish that entrapment occurs "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." *Sorrells v. U.S.* 287 U.S. at 442, 53 S.Ct. at 212–213; *accord, United States v. Russell,* 411 U.S. at 428–29, 93 S.Ct. at 1641; *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958).

Notwithstanding the forceful arguments to the contrary, it is clear that when entrapment is at issue the focal point of the inquiry is on the predisposition of the defendant.[3] *See United States v. Russell,* 411

*Russell,* 411 U.S. 423, 440, 93 S.Ct. 1637, 1646–1647, 36 L.Ed.2d 366 (1973) (Stewart, J., dissenting). The subjective approach focuses on the predisposition of the defendant. Therefore, regardless of the government's level of involvement in the crime, the defense is not available unless the defendant was not predisposed to commit the crime charged. Whether this is an accurate reading of the majority opinions in *Sorrells* or *Sherman* is unimportant, for the Court's opinion in *Russell* holds that predisposition is the key:

This Court's opinions in *Sorrells v. United States, supra* and *Sherman v. United States, supra,* held that the principal element in the defense of entrapment was the defendant's predisposition to commit the crime. . . .

We decline to overrule these cases.

U.S. at 433, 93 S.Ct. at 1643. Thus, a defendant who wishes to assert an entrapment defense must initially come forward with evidence " 'that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.' " *United States v. Dickens*, 524 F.2d 441, 444 (5th Cir. 1975) (quoting *United States v. Mosley*, 496 F.2d 1012, 1014 (5th Cir. 1974)). Once the defendant has carried this burden, the government must, if it is to prevail, prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged. *United States v. Dickens*, 524 F.2d at 444.

### III. *Hearsay to Prove Disposition*

Until today, this Circuit has permitted the prosecution to introduce all manner of hearsay evidence to rebut the defendant's claim that he was entrapped. Many of the cases have permitted introduction on the theory that the hearsay was acceptable as proof of the defendant's predisposition. If this was ever justified,[4] it is no longer acceptable.

We begin with basic principles of evidence law. The law of evidence concerns itself primarily with the ways in which the parties may and may not prove the existence of facts. Generally, the law frowns upon attempts to prove facts by statements made outside the courtroom. Whether an out-of-court statement is hearsay depends on whether it is offered for its truth or merely for the fact that it was made. Where the alleged fact is only so if the substance of the statement is the truth, the statement constitutes hearsay. *See Anderson v. United States*, 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974). On the other hand, where the alleged fact may be so regardless of whether the statement is true or false, the statement is not hearsay. *See id.*

The out-of-court statements that we have held admissible in entrapment cases fall into three categories: (1) statements made by an informant to a law enforcement officer about the defendant's reputation for being a criminal; (2) statements made by an informant to a law enforcement officer about specific instances in which the defendant engaged in criminal activities; and (3) statements about the defendant, made by various sources, that have been recorded in police reports. Typically, the law enforcement officer testifies either to conversations with the informant or to having read the police report. When offered to prove predisposition, any such statements are out-and-out hearsay. Predisposition is a state of mind, *see United States v. Donoho*, 575 F.2d 718, 719–20 (9th Cir. 1978), and "[t]he state of a man's mind is as much a fact as the state of his digestion." 2 Wigmore, *Evidence* § 661, at 774 (3d ed. 1940) (quoting *Edgington v. Fitzmaurice*, L.R. 29 Ch.D. 459 (1882)). The out-of-court statements about prior criminal activities and reputation for criminality prove the fact of predisposition only if they are substantively true. *See United States v. McClain*, 531 F.2d 431, 436 (9th Cir.), *cert. denied* 429

---

411 U.S. at 443, 93 S.Ct. at 1648; *accord, Hampton v. United States*, 425 U.S 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976) (Rehnquist, J.).

A minority of the Justices have expressed a preference for the "objective" approach, which focuses on the government's conduct. Their position was summed up by Justice Stewart, dissenting in *Russell*:

[T]he question is whether—regardless of the predisposition to crime of the particular defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense. 411 U.S. at 441, 93 S.Ct. at 1647 (Stewart, J., dissenting); *accord, Sherman*, 356 U.S. at 382–

83, 78 S.Ct. at 825–826 (Frankfurter, J., concurring in result); *Sorrells*, 287 U.S. at 458–59, 53 S.Ct. at 218–219 (Roberts, J.).

4. *Washington v. United States*, 275 F.2d 687 (5th Cir. 1969) which began the development of the line of cases in this circuit, did not concern hearsay to prove predisposition. It involved the correctness of a jury instruction that had not been objected to. From *Washington* we have slid into reputation to prove predisposition, reputation to prove governmental good faith, motive and reasonableness, and hearsay evidence of specific acts to prove predisposition and to prove governmental good faith, motive and reasonableness.

U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976). The mere fact that the statements were made is not evidence that the defendant was predisposed to commit the crime charged.

■ We have little trouble rejecting the government's argument that such statements are admissible under the character/reputation provisions of the Federal Rules of Evidence,[5] *see* Fed.R.Evid. 404(a)(1), 405, 803.[6] Read together, these Rules provide that evidence of a person's reputation in the community and specific instances of conduct may be admitted to prove "a pertinent trait of his character," Fed.R.Evid. 404(a)(1). We need merely repeat that which we have already stated: predisposition is a state of mind, not a character trait.[7]

■ Our creation of a rule that allows gross hearsay evidence to be used to prove predisposition has resulted in the very evils that the rule against hearsay was designed to prevent. The jury is free to believe the unsworn, unverified statements of government informants, sometimes unidentified, whose credibility is not subject to effective testing before the jury and whose motivations may be less than honorable.[8] We are hard pressed to envision a situation where the disparity between the probative value and prejudical effect of evidence is greater. Finding inapplicable the exceptions to the rule against hearsay enumerated in the Federal Rules of Evidence, we hold that hearsay evidence is never admissible for the purpose of proving the defendant's predisposition.[9] All prior decisions of this Court to the contrary are hereby overruled.

5. The government contends that the informant's statements were admissible "as proof of [the defendant's] reputation, an issue which was uniquely placed in issue by his entrapment defense." Supp. Brief for Appellee at 7.

6. For clarity, we set out these rules below:
Rule 404:
(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
Rule 405:
(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowed into relevant specific instances of conduct.
Rule 803:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(21) Reputation as to character. Reputation of a person's character among his associates in the community.

7. We find another major flaw in the government's argument. To be admissible, reputation evidence must: (1) come from a person who is "familiar with the defendant's reputation ... and competent to speak for the community," (2) relate "to the pertinent trait of defendant's

character; (3) relate to the defendant's "reputation in the community where he resides"; and (4) relate "to a time contemporaneous with the act charged." 2 *Weinstein's Evidence* ¶ 405[02], at 405–16 to –18 (1979). Assuming arguendo that predisposition is a pertinent character trait, Rule 803 would allow an informant, who had the requisite knowledge of the defendant's reputation, to testify in court about the defendant's reputation and, on cross-examination, about specific instances of the defendant's conduct. Although the informant's testimony is hearsay, Rule 803 allows it to be admitted. But when the government agent, who almost always is not qualified to speak on behalf of the community, testifies as to what the informant told him about the defendant's reputation, and the informant's statements are themselves based on information from other sources, we move out of the realm of ordinary hearsay and into the realm of double-level hearsay. Rule 803 simply does not address the latter.

8. Judge Gee's panel opinion reminds us that while the use of informants is of obvious value in law enforcement and the work of informants is often well motivated, informants often are "[m]oved by a desire for vengeance or for money, by the hope of lenience for [their] own misdeeds, by revulsion at drug trafficking, or by any combination of the above . . . ." 606 F.2d at 584.

9. In view of our holding, we need not decide whether admitting the statements of an undisclosed informant violates the defendant's Sixth Amendment right of confrontation.

The prosecution may not do indirectly what we hold that it cannot do directly. Therefore, except in the limited circumstances described in part IV of this opinion, the hearsay that is inadmissible to prove predisposition may not be admitted on the assertion that it is offered as direct evidence that the governmental actions at issue were reasonable and done in good faith or for proper motives. Although there were some doubts prior to 1976, the Supreme Court's decision in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) makes it clear that the crucial issue in entrapment cases is whether the defendant was predisposed to commit the crime. The agent's good faith, motive or reasonableness is of only secondary significance, if relevant at all. Out-of-court statements offered for these purposes will almost always have little probative value, and the prejudical effect of the evidence is likely to be great because the jury might consider it as evidence of predisposition or of bad character.

We are not unaware that our holding today may cause the government some difficulties in future trials. Often the government will have no reason to believe prior to the trial that the defendant intends to raise an entrapment defense. If the defendant waits until the trial is under way to raise the defense, the government may find itself in the difficult position of having quickly to locate and prepare witnesses it did not believe would be needed.[10] We in no way wish to encourage tactics that impede the proper administration of trials. To avoid this problem, the district courts may, by local rule, require defendants to disclose their intention to raise the defense prior to trial. *Cf. Abney v. United States*, 431 U.S.

651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 n.8 (1977) (courts of appeals have authority to establish procedures to deal with administrative problems created by frivolous claims of double jeopardy).

### IV. *Direct Evidence of Good Faith*

As we have already pointed out, in the run-of-the-mill entrapment case where no such special circumstances are present, evidence of good faith, motive and reasonableness of the government is, at least since the *Russell* decision, of little if any significance and the prejudice will outweigh any probative value. Rule 403 of the Federal Rules of Evidence provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ...." Fed.R.Evid. 403. In almost all cases the scale will fall on the side of prejudice. In rare circumstances governmental good faith, motive, and reasonableness may take on significance beyond the scope of entrapment *vel non*. For example, the defendant might assert that a particular agent participating in the government's activities was out to get him only because the agent harbored some personal prejudice against him. It would then be appropriate to allow the government to prove that the agent acted with proper motive in pursuing the defendant.

### *Conclusion*

In this case, the evidence was admitted for the impermissible purpose of proving that Webster was predisposed to commit the crime charged. We reject the argument that the admission of this evidence was harmless error.[11]

REVERSED.

---

10. As a consequence of the general rule in this circuit that entrapment may not be raised as a defense unless the defendant admits the acts upon which the prosecution is based, *see e. g., United States v. Greenfield*, 554 F.2d 179, 181 (5th Cir. 1977); *United States v. Morrow*, 537 F.2d 120, 138–39 (5th Cir. 1976), the government usually will get some advance warning of the defense's intentions.

By suggesting that the government *may* have to produce witnesses with direct testimony of prior acts to prove predisposition, we do not intimate that such proof is the only evidence sufficient to the task. Evidence of defendants' conduct at and preceding the commission of criminal acts can suffice to carry the burden. *See United States v. Dickens*, 524 F.2d 441, 445 (5th Cir. 1975).

11. As to Webster's other assertions of error, we adopt the decisions of the panel, reported at 606 F.2d 581, 584–85 (5th Cir. 1979).

GEE, Circuit Judge, with whom BROWN, AINSWORTH, CHARLES CLARK, TJOFLAT, RUBIN, REAVLEY, RANDALL and SAM D. JOHNSON, join, dissenting:

In my view, the persuasive majority opinion arrives at its result by treating one-half of a recurring fact situation as though it did not exist, by over-simplifying Supreme Court precedent, and by all but preempting a discretion reposed in the district court by Rule 403, Federal Rules of Evidence. Because I am in serious doubt about the result so arrived at and am, moreover, unwilling so ruefully to run down the flag on a twenty-year course of decision in our circuit, I respectfully dissent.

*The Recurring Fact Situation*

The majority correctly notes that the entrapment defense is unique to our country's jurisprudence.[1] In practice, it takes the form of an attack on the prosecution as being one for a crime that was instigated by the government itself—a further instance of our American love of fair play, our distrust of sovereigns, and our taste for a near-run thing. As we shall see later, the Supreme Court has never entirely agreed about why such a defense should be recognized at all.

In one persistent view, discussed at greater length below, the primary focus is on the courts, as above compromising their integrity by entertaining prosecutions for contrived offenses instigated by the police. In the other, it is on the Congress, as not having intended to punish such literal transgressions of a statute as are instigated by the government's unseen, insidious hand. At all events, in both theoretical formulations some such term as "instigated" or "induced" is an indispensible ingredient. Here is the rub.

Viewing any given situation where one contends that he was "induced" to commit an act, two factors are inherent in the analysis. One is the susceptibility of the subject, the other the strength of the inducement. This case is no exception, as the defendant's own statement of facts set out in the margin demonstrates.[2]

Recurringly, as here, the accused attempts to demonstrate his innocence of predisposition by highlighting the strength and malevolence of the inducements applied to

---

1. Like insanity, it usually figures as a defense of last resort, employed when all else is hopeless.

2. The Defendant, ALBERT KEITH WEBSTER, met a government confidential informant known to the Defendant as "Susan Spears" at a massage parlor known either as the Port-O-Call or the Executive Massage Parlor. "Susan Spears," not her true name, was a paid government informant who had received a total of $3,500.00 for "making a case" other than the case involving the Defendant. "Susan introduced the Defendant to Drug Enforcement Administration (DEA) Special Agent, Vincent J. Mazzilli at the Holiday Inn, right next to Calder Racetrack. The government confidential informant "Susan" after introducing the Defendant to Agent Mazzilli "was taking cocaine and stuff."

The Defendant was alleged to have sold and delivered approximately 19 grams of cocaine to Agent Mazzilli for $1,050.00 on May 17, 1978. This was denied by Defendant.

The Defendant was further charged with possessing with intent to distribute, approximately 500 grams of cocaine and distribution of approximately 500 grams of cocaine (18 ounces) on May 22, 1978. The Defendant presented the defense of entrapment stating that the confidential informant "Susan" kept calling him asking him to help her "do a big deal with these guys, because I was big; and that I could make some money." The Defendant continued to advise "Susan" that he was not interested but she kept calling him trying to talk him into making a delivery for her to these men and the Defendant finally agreed to assist her and the packet of cocaine was delivered to the Defendant by a friend of "Susan." The Defendant further stated that the only reason he agreed to help "Susan" was because they had sexual relations "numerous times" and because "I thought she was my friend. I had taken her to the racetrack. I had gone to bed with her, and we'd been friends."

In rebuttal to the entrapment defense the Government called DEA Agent Richard Fiano, who stated that in October of 1977 he had a conversation with an informant who advised Agent Fiano that he had previously purchased cocaine from an individual named Keith Webster who was described as "a large individual, about 260 lbs., male, white. That is it."

Brief of appellant Webster to the panel, record references omitted.

him by the government—an attacking defense that puts the prosecution on trial. And, just as predictably, the government defends by attempting to show that the accused was not an innocent, had done such things before, and the like. Since the accused's attack, as here,[3] necessarily impugns both the methods employed by the government and its motives and actions—implicating innocents in contrived crimes—the government often seeks to show that the accused was not an innocent at all. And since its motives and tactics are attacked as well, it offers proof that its belief in the accused's predisposition was a reasonable one. This seems to me a proper response to the attack of the accused, an attack which in the nature of things can scarcely avoid—and will seldom wish to—demeaning the government's means and motives in setting the trap that caught him. Necessarily, such a response will often rest in large part on hearsay: the reports on which the government acted in deciding to provide the opportunity. And to ignore these evident realities is to exclude in advance, and without regard to the balancing test laid down for such occasions by Rule 403, evidence which may be of great relevance and probative force.

Logically, if the character of the government's conduct is a proper issue in the case, then the motive with which it acted is an appropriate subject of proof. One form such proof may take is that of hearsay evidence going to the government's state of mind in providing inducements to the accused, evidence offered not for the truth of the matter asserted in hearsay but to show the reasonableness of the government's belief that it was dealing with an unwary criminal, not an unwary innocent.

As Judge Wisdom wrote for our court long ago:

Washington's final complaint is that the court erred in permitting Robinson [a federal agent] to testify, over objections, that he had been told by several people that he could purchase narcotics from Washington. There is no merit in this contention. Once the defense of entrapment has been raised, it is proper to inquire into the reputation of the defendant to determine his predisposition to commit the offense or to inquire into the reasonableness of the officer's conduct. *Sherman v. United States*, supra; *Accardi v. United States*, supra; *Mitchell v. United States*, 10 Cir., 1944, 143 F.2d 953. *The trial judge properly instructed the jury to consider such testimony only for the limited purpose of determining if Robinson had good cause to believe that Washington was trafficking in narcotics.*

*Washington v. United States*, 275 F.2d 687, 690 (5th Cir. 1960) (emphasis added).

If, as noted, the character of the government's conduct remains a relevant consideration in the entrapment calculus, then these words are as correct today as they were when Judge Wisdom wrote them. Let us consider, then, whether it does.

*Relevant Supreme Court Authority*

In discussing this subject in the panel opinion, we wrote:

[I]t was not at the time we adopted our rule, nor has it ever been, the law that the focus in entrapment decisions is primarily on the character of the government conduct involved. The quality of that conduct has always been viewed by the high Court as a secondary consideration. As the Supreme Court teaches in *Russell*, supra at 428–32, 93 S.Ct. 1637, the notion that government conduct was the primary or sole consideration has from the first—since the Court recognized that defense in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)—been a minority view on the Court. Predisposition of the defendant is now and always has been the first consideration.

Nor is it necessarily so that with *Russell* predisposition, having once been a secondary consideration, became the sole one. The *Russell* Court's opinion speaks of nonpredisposition as "the principal element in the defense," *id.* 411 U.S. at 439,

---

**3.** *See* note 2, *supra.*

93 S.Ct. at 1643, which seems to imply that there are subsidiary ones. And elsewhere, the *Russell* Court hypothesizes government conduct so outrageous that it may constitute a defense. *Id.* at 431, 93 S.Ct. 1637. Our circuit's authorities have long considered both the predisposition of the defendant and the character of the conduct of government agents to be material to the entrapment defense. *Washington v. United States*, 275 F.2d 687, 689 (5th Cir. 1960); *Accardi v. United States*, 257 F.2d 168, 172–73 (5th Cir. 1959). In the latter opinion cited, our panel "weighed carefully the conduct of the government agents," correctly recognizing that in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), *Sorrells'* follow-on companion, "the language of the majority of the court, shows that they attach almost as much importance as the minority to the *conduct of the government agents*." *Accardi, supra* at 173 (emphasis in original). And though the 1973 decision in *Russell* clearly requires us to give preeminence to the predisposition factor, neither it nor reason requires us to abandon all consideration of the character of police conduct in a given affair.

Surely it is possible that what Webster sought to show in this case—that he was an utter innocent, corrupted and seduced by the sexual favors of a government agent into selling back to the government cocaine supplied him by that agent at the government's behest—might be seen as "outrageous" by some courts. And though we are not connoisseurs of the degrees of outrage, we are willing to hazard that the showing of an honest and well-founded belief by the government agents involved that Webster was no innocent at all, but rather a criminal who dealt routinely in large amounts of contraband drugs, would remove considerable of the blush from Webster's entrapment-outrage rose. We therefore cannot say that the showing made here was irrelevant to the character of government conduct that constitutes an element of the entrapment defense. Nor do either logic or clear authority teach that, when the character of that conduct is attacked as it was here, it may not be defended by proof that it was motivated by a desire to trap the unwary criminal, not the unwary innocent. *See Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958).

*United States v. Webster*, 606 F.2d 581, 583–84 (5th Cir. 1979).

The Supreme Court has written nothing in the area since we handed down the above. If correct when written, it is therefore still so. The character of government conduct, certainly if "outrageous," remains an issue, albeit a secondary one, in such prosecutions as Webster's. The Supreme Court has not written it away. Neither should we. And in fact no court, however exalted, can write the thorns off roses or divide the indivisible. When an accused raises the entrapment defense, asserting his lack of predisposition and attacking the government's means, its motives are perforce called in question. To deny to it a major mode of defending them seems to me unwise. Nor, as I shall attempt to show in the following, is it necessary.

### Rule 403, Federal Rules of Evidence

It rests, of course, in the *trial* court's broad discretion to admit or exclude evidence. Ordinarily, evidence relevant, competent, and material will be admitted. As the majority correctly notes, however, Rule 403 permits that court to exclude even relevant evidence on various grounds.[4]

The sort of evidence under examination, if offered in response to an attack on the government's good faith, meets all three

---

**4.** Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

general criteria for admission.[5] Rule 403 contemplates, however, that if in the judgment of the trial court its probative force is substantially outweighed by the danger of unfair prejudice, he may in his discretion exclude it. Though I can no more foresee than can the majority the myriad possible factual and evidentiary contexts in which these issues may arise, clearly there are likely to be many in which the district judge's discretion should be exercised to exclude. I suspect there will be others where, in the exercise of that same discretion, the matter should have been admitted.

But no more. Instead, the new evidentiary rule—it is literally that—announced by the majority excludes such evidence "in almost all cases," regardless of what the judge in the arena at those cases may conclude pursuant to Rule 403. Lacking such prescience, I would not do so.

---

5. Such evidence should not, of course, be received unless the defendant has in some manner impugned the good faith of the government. Unless this subject has been raised by the defense, the issue of the government's collective state of mind is irrelevant.