**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Minor JONES, Jr., Defendant-Appellant.**

**No. 72-2473.**

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1973.

Certiorari Denied May 14, 1973. See 93 S.Ct. 2280.

Howard Oliver, Montgomery, Ala. (Court Appointed), for defendant-appellant.

Ira DeMent, U. S. Atty., David B. Byrne, Jr., Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before GODBOLD, DYER and CLARK, Circuit Judges.

**294**

GODBOLD, Circuit Judge:

This appeal is from a conviction of conspiracy to violate liquor laws.

## 1. ENTRAPMENT

 We reject the contention of defendant that entrapment was established as a matter of law entitling him to a judgment of acquittal. This circuit has followed the classic formulation of United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), that entrapment presents two separate issues of fact, first, whether there was governmental inducement, and, second, if there was inducement whether the defendant was ready and willing to commit the act without persuasion. Pierce v. United States, 414 F.2d 163, 166–167 (5th Cir. 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). The evidence of governmental inducement, consisting of conduct by the government creating a substantial risk that the offense would be committed by a person other than one ready to commit it, Pierce, supra, 414 F.2d at 168, was sufficient that it would have been necessary to grant a motion for judgment of acquittal if there had not been other evidence tending to show readiness and willingness to commit the act without persuasion. Evidence of willingness may include, but is not limited to, proof of prior offenses and predisposition. It also may include evidence of eagerness to deal in the transaction in issue if a jury could conclude that such eagerness was not itself a product of the inducement whose impact on the mind of the defendant is in question.[1]

The relevant evidence is as follows. A government undercover agent operating in the Columbus, Georgia, area was asked to assist other agents in securing the arrest and conviction of E. T. Green, an alleged violator living in the rural community of Union Springs, Alabama, not far distant from Columbus. The agent made a trip to Union Springs and sought to purchase liquor from Green, but Green would not deal with him. He then secured part-time employment at a barber shop in Columbus where another of the employees was the defendant, who was part-time barber and part-time minister. Defendant had grown up in Union Springs and had family connections there. After the agent had come to know defendant somewhat better he approached defendant and told him that he was in the [liquor] hauling business and inquired if defendant knew any source of supply. The agent stated that "he [defendant] told me that he knew an individual who I could get as much as I wanted from," that defendant told him that he [defendant] knew potential customers who would take a large quantity, and that defendant told him that "he knew somebody who could get me as much as I wanted."

At a later date the agent planned a trip to Union Springs and, without telling defendant the purpose offered him a ride, and defendant accepted. En route the agent told defendant that he was returning empty moonshine jugs and brought up the question of where he could get some whiskey cheap. Defendant responded with the name of E. T. Green and stated what he thought Green's price was (which turned out to be erroneous). They proceeded to Union Springs, arranged through an intermediary for a buy from Green, delivered the empty jugs to another violator, then returned to pick up their buy. The intermediary informed them that Green had been there and had left word that

---

[1]. Thus, the accused by his own actions may reveal that he was not an innocent lamb. However the mere combination of the fact that there have been governmental blandishments and the fact that the defendant committed the act, does not establish readiness and willingness. It may prove no more than that the blandishments were successful, and begs the question of whether the defendant was an innocent lamb when the inducements occurred. To infer readiness and willingness from the transactions in question (as opposed to inferring it from prior occurrences) requires not merely evidence that the accused was shorn but evidence that he went all too eagerly to the shearing shed.

"he would only deal with Reverend Minor Jones, Jr." Green appeared on the scene, Green and defendant left together to get the liquor, and defendant returned with it in the agent's car. The agent and defendant left and proceeded to Columbus with the illegal liquor. En route defendant asked the agent for the keys to the trunk and stated that if they were stopped he would display his minister's license and would say that he was chauffeuring for the agent. All that defendant received from the agent for his participation was ten dollars.

From this testimony a jury could infer that the defendant was all too eager to be a participant in the transactions and could conclude on the basis of all the evidence that he was not entrapped. Jones expresses indignation that the agent took advantage of apparent friendship and involved him in a transaction directed at catching Green and netting defendant only ten dollars and a criminal conviction. While it is plain that the main focus was on Green this is not to say that others may not be swept up in the pursuit. The jury could infer from defendant's original ready responses to the agent, his steering of the agent to Green, Green's statement that he would only do business with Jones, and defendant's joint trip with Green to pick up the liquor, that defendant was not only an outsider willing to be involved but actually an insider whose precise relationship to Green was unrevealed.

## 2. THE PRESENTENCE REPORT

At sentencing, and before sentence was imposed, the defendant said to the court that he had never been in trouble before. The court then stated, "You have been in something before. You shouldn't say that." The judge asked for the sentencing report, and a colloquy with defendant ensued, obviously based on the contents of the report.

In that dialogue there was discussion of two minor offenses on which defendant said he had been charged but not convicted. The court then inquired about a conviction for operating a lottery, and defendant, Minor Jones, Jr., explained the offender had been his father, Minor Jones, Sr. To this the court responded, "[t]hat is your daddy; all right; I am glad I asked you these questions, then." Next the judge asked: "[A]nd how about commercial gambling in October, 1970? Was that your father, too?" The defendant replied affirmatively, and the court responded, "[a]ll right, I accept that. . . . I accept what you say about it."

After sentence was imposed defense counsel moved to be allowed to inspect the presentence report on the ground that defendant had only convictions such as minor traffic violations and none for serious offenses, that the revealed errors in the report led to the inference that it might contain other errors which materially influenced the court in assessing sentence, and that the uncertainty could be laid to rest only by inspection of the report. The trial judge ordered a supplemental presentence report, and, after receipt of it, entered an order denying the motion, noting that prior to sentencing he had accepted defendant's repudiation of the two convictions, and that the supplemental report verified the correctness of defendant's repudiation. The order also recited:

> The probation presentence report does not reflect any further significant information upon which this Court based its sentence[1] other than that which

[1]. The Court heard the testimony and observed the witnesses testifying in this case, and in this manner secured a detailed knowledge of the defendant's attitude and conduct during the course of events upon which this conspiracy conviction was based.

> was revealed during the trial of this case and other than certain highly confidential information, the divulgence of which would seriously interfere with the effectiveness of the probation officers in this district in securing information from confidential informants. This confidential information, if disclosed, would be readily traceable.

.This Court now states, as a matter of record, that the sentence imposed in this case was not based, in whole or in part, upon any of this confidential information that is not being disclosed. However, so that the discretion now being exercised by this Court can be reviewed in its entirety by the appellate court, if and when this question is presented on appeal, the entire presentence report in this case is being sealed, attached to, and made a part of this order. The presentence report is to be unsealed and reviewed only by the reviewing court or courts.[2]

■■ Denial of the motion to inspect was not error. Reliance by the court on undisclosed presentence information is not constitutionally proscribed, Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The defendant points out, however, that in Williams v. New York there was no challenge to the accuracy of the report while in the present case it affirmatively appeared that there were inaccuracies. He relies upon Townsend v. Burke, 334 U.S. 736, 68 S. Ct. 1252, 92 L.Ed. 1690 (1948), as authority that once inaccuracies appear due process requires that the full report be divulged in order that the defendant be given an opportunity to correct the errors which have surfaced and to ascertain if there are others which remain unrevealed. We do not read *Townsend* as going that far. The defendant in that case was without counsel. The decision was that while disadvantaged by the lack of counsel the defendant was sentenced on the basis of assumptions by the court concerning his prior criminal history which from the record it appears were materially incorrect. In the case before us defendant had counsel, when errors surfaced the trial court inquired

into them and accepted defendant's corrections, and only then was sentence imposed. Thus the issue is whether disclosure of the full report is required once it has come to light that the report is at least partially incorrect, if the revealed errors are corrected before sentencing.

■ Despite policy recommendations to the contrary by prestigious professional organizations, e. g., A.L.I. Model Penal Code, Preliminary Draft 1962 § 7.07(5); ABA Standards Relating to Sentencing Alternatives and Procedures, § 4.4 (Approved Draft 1968); Advisory Committee on Criminal Rules, Note, 48 F.R.D. 553; National Council on Crime and Delinquency, Model Sentencing Act, § 4 (1963),[3] disclosure of presentence reports remains not required by rule. See Rule 32, Fed.R.Crim.P., as amended to Oct. 1, 1972. In fact, the Advisory Committee's recommendation that there be disclosure unless in the opinion of the court the report contains information which if disclosed would be harmful to the defendant or other persons, 48 F.R.D. 615–618, was not followed in the adoption in April, 1972 of the amendments to Rule 32 which became effective October 1, 1972. Thus, disclosure remains discretionary with the court under Rule 32(c)(2).

Defendant alternatively contends that the court's allowable range of discretion was exceeded, but that is without merit.

In U. S. v. Battaglia, (No. 72–1754, 5th Cir. Nov. 16, 1972), at the time of sentencing the trial judge stated that he was taking into consideration certain facts which he believed to be true. After sentence defendant moved to set aside or modify the sentence on the basis that the facts believed by the court to be true were untrue. The court denied the motion, stating that he would have imposed the same sentence

---

2. While not necessary to our decision, we state that we have unsealed the report, examined it, and resealed it, and we agree with the conclusion of the District Court concerning confidential information which it contains.

3. To the same effect, see recommendation of the President's Commission on Law Enforcement and Administration of Justice. The Challenge of Crime in a Free Society, (1967), p. 145.

even if the facts were untrue. We vacated and remanded to give the defendant a chance to remove any lingering doubt which the trial court might have about the facts, after which it was to reconsider the sentence in the light of the true situation. In the present case the sentencing judge possessed the true facts before he imposed sentence, so no reconsideration is appropriate.

Affirmed.