UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Edward DICKENS, Sr., Gus
Peter Glenos and Robert Morrison,
Defendants-Appellants.

No. 74–3627.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1975.
Rehearing Denied Feb. 3, 1976.

Thomas M. Haas, Mobile, Ala., for defendants-appellants.

Charles S. White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., William R. Favre, Jr., Asst. U. S. Attys., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Defendants Dickens, Glenos and Morrison appeal from their convictions of conspiring to distribute (21 U.S.C. § 846) and knowingly and intentionally distributing and possessing with intent to distribute (21 U.S.C. § 841(a)(1)) over 223 pounds of marijuana. At trial, the defendants attempted to prove that they were entrapped by the combined efforts of an informer and two special agents of the Drug Enforcement Administration (DEA). The jury was charged on the law of entrapment but returned guilty verdicts as to all defendants. On appeal, defendants urge two grounds for reversal: (1) the cause should not have been submitted to the jury because the evidence established entrapment as a matter of law; (2) the trial court erred in limiting the applicability of its "contingent fee informer" charge to defendant Morrison. We affirm.

## I. THE FACTS

At least a week prior to defendants' arrest, Jack Taylor, a DEA agent, and Jessie Graddick, a Mobile resident who worked as a confidential informer, devised a plan to involve defendants in an illegal drug transaction. Taylor, using the alias of Dick Prescott, would pose as a wealthy gambler who had just flown in from South Carolina for the purpose of purchasing a large quantity of marijuana. Graddick's role was to set up the "buy" by contacting his friend, defendant Morrison, who in turn would arrange for the contraband to be furnished by defendants Dickens and Glenos.

Up until the last moment, the plan seemed to progress according to schedule. Agent Taylor testified that on the evening of March 25, 1974, he was met at the airport by Graddick and Morrison and driven to a motel in Morrison's car. At the motel, Morrison separately introduced "Prescott" to Dickens and Glenos and arrangements were made for a sale

the next day. On the morning of March 26, 1974, Morrison, Dickens and Graddick met with "Prescott" and DEA special agent Clifford Brown who was posing as "Prescott's" airplane pilot who would fly the marijuana out of Mobile. "Prescott" then lent the defendants a rental car to use in transporting the marijuana. The defendants proceeded to pick up the marijuana supplied by Dickens and Glenos. After leaving the car at a preselected location, they returned to the motel. On his return, defendant Morrison was accompanied by a man who was able to identify agent Brown as a narcotics officer. Realizing that their cover was blown, the agents arrested the defendants. The car, loaded with marijuana, was located and seized approximately two hours later.

The defendants did not attempt, for the most part, to controvert the government's version of the events immediately preceding the arrest. Rather, they sought to establish that they had been the victims of illegal entrapment. The informer Graddick testified as a witness for the defense that he had known Morrison for over 12 years, that they were very close friends and that he knew that Morrision had never smoked marijuana and was not a drug dealer. He explained how he induced Morrison to become involved by reminding him of their friendship, telling Morrison that he needed money and tempting Morrison with false stories about "Prescott's " lavish wealth and spendthrift nature. Graddick admitted that the government had paid him 300 dollars for his efforts and had requested an IRS agent to postpone the due date on back taxes Graddick owed. Graddick also described how he encouraged Morrison to contact Dickens and Glenos and how he related some of the tales about "Prescott" to these other two defendants.

Defendant Morrison took the stand and portrayed himself and his co-defendants as innocent men who had been overborne by Graddick's constant urgings. Morrison testified that prior to "Prescott's" arrival, Graddick met with

him 15 to 20 times and called him about 60 times in an effort to overcome his reluctance to deal in marijuana. According to Morrison, he was hesitant even on the morning of arrest and would not have participated except for Graddick's persistence.

To rebut the entrapment defense, the government produced two narcotics officers who testified that they had been told by unidentified informants that defendants Dickens and Glenos had reputations for dealing in marijuana. These officers had no knowledge of Morrison's reputation. The government contested Morrison's claim of entrapment by eliciting testimony from Graddick, Morrison and Taylor to show that Morrison expected to receive a substantial sum for his part in the transaction and that Morrison had once purchased a lid (approximately 1 ounce) of marijuana.

## II. ENTRAPMENT AS A MATTER OF LAW

■ Defendants admit that the jury was properly charged on the general law of entrapment.[1] They assert that the court's principal error was in submitting the issue to the jury at all since the proof established they were entrapped as a matter of law. In the landmark case of *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), the United States Supreme Court chose not to depart from the traditional view of the entrapment defense and reaffirmed the rule that "[i]t is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *Id.* at 436, 93 S.Ct. at 1645. If the government agent has merely provided the opportunity or facilities for the commission of crime, the prosecution will not be defeated. *Id.* at 435, 93 S.Ct. at 1644. *Russell* teaches that the primary focus is on the predisposition of the accused rather than

the agents' actions. *Id.* at 429, 93 S.Ct. at 1641.

■ This court has previously explained the proper allocation of the burden of proof when trying a case in which entrapment is claimed. The defendant must first come forward with evidence sufficient to raise a jury issue "that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it." *United States v. Mosley*, 496 F.2d 1012, 1014 (5th Cir. 1974) *citing Pierce v. United States*, 414 F.2d 163, 168 (5th Cir. 1969). Once such issue is raised, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the charged offense. *Id. See also United States v. Gomez-Rojas*, 507 F.2d 1213, 1218 (5th Cir. 1975). By relying on entrapment as a defense, an accused exposes himself to a "searching inquiry into his own conduct and predisposition . . . ." *Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). To negative the defense, the government may introduce evidence to prove predisposition which is otherwise inadmissible. *United States v. Moriarty*, 497 F.2d 486, 488 (5th Cir. 1974); *United States v. Simon*, 488 F.2d 133 (5th Cir. 1973).

■ In the case at bar, the defendants were entitled to an instruction on entrapment. Graddick was instrumental in orchestrating the events which culminated in the prohibited transaction. The entrapment issue centered upon whether Graddick's conduct had the effect of corrupting "otherwise innocent" men to break the law. *See Sorrells v. United States*, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). Our appellate review function is directed to determining if enough evidence was presented to enable a reasonably minded jury to reach the conclusion that the defendants were predisposed to deal in contraband. *United States v. Mitchell*, 493 F.2d 9 (5th Cir.

---

1. At oral argument, defense counsel formally withdrew all other objections to the trial court's charge.

1973); *United States v. Stills*, 476 F.2d 592 (5th Cir. 1973).

■ We have little difficulty affirming that the evidence warranted a jury submission and that the guilty verdict is supported with respect to defendants Dickens and Glenos. The reputation testimony provided by the narcotics officers was sufficient to permit the jury to find that these defendants were not unwilling to commit the crime. No objection may be made to the hearsay nature of the officers' testimony. We have held that if entrapment is asserted, hearsay is admissible to show predisposition and the government is not required to disclose the names of the informants. *United States v. Simon*, 488 F.2d 133, 134 (5th Cir. 1973); *United States v. Brooks*, 477 F.2d 453 (5th Cir. 1973). Further, after hearing the evidence relating to Morrison's and Graddick's contacts with Dickens and Glenos prior to arrest, it would have been hard for the jury to accept the theory that the wills of these two men had been overborne by government-sponsored solicitations. In addition to considering testimony as to Dickens' and Glenos' reputation for dealing in drugs, the jury was entitled to consider the ability of these defendants to supply large quantities of marijuana shortly after they had been requested to do so.

■ Whether the government adequately discharged its burden of proving predisposition with respect to defendant Morrison presents a more difficult question. Morrison had no reputation for dealing in drugs. His single purchase of a small quantity of marijuana is not probative of a willingness to engage in a large scale drug transaction. However, the quality of Morrison's conduct prior to the commission of the offense is such that the question of his guilt was properly put to the jury. To a large extent, Morrison was responsible for bringing together all the parties to the transaction. He introduced his co-defendants to the prospective buyer and acted as the intermediary who greatly facilitated the successful and rapid completion of the

crime. Moreover, Morrison was motivated to make the introductions and expedite the crime by the expectation of financial gain. If the sale were carried out, he expected to realize over 3,000 dollars profit plus a 1,000 dollar bonus for every 100 pounds of contraband he caused to be distributed.

■ Proof of willingness or predisposition to commit crime may take more than one form. The government is not restricted to introducing past crimes or reputation evidence. In *United States v. Jones*, 473 F.2d 293 (5th Cir. 1973), we stated:

Evidence of willingness may include, but is not limited to, proof of prior offenses and predisposition. It also may include evidence of eagerness to deal in the transaction in issue if a jury could conclude that such eagerness was not itself a product of the inducement whose impact on the mind of the defendant is in question. *Id.* at 294.

The First Circuit has regarded proof of "the readiness and celerity with which a defendant comported with government overtones . . ." as a legitimate means for the prosecution to negate the entrapment defense and to show predisposition. *Whiting v. United States*, 296 F.2d 512, 516 (1st Cir. 1961). In *United States v. Jenkins*, 480 F.2d 1198 (5th Cir. 1973), this court found that the defendant's post-crime statement ("if you need more, I'll be here") constituted sufficient evidence to permit the trier of fact to infer a prior willingness to commit a narcotics offense. *Id.* at 1200.

■ From these authorities it can be discerned that a jury may appropriately consider the defendant's conduct and statements subsequent to his initial contact with the government agent, as well as proof of his state of mind before the contact was made, to determine whether the accused should be classified as an "unwary innocent" or an "unwary criminal." This is not to say, however, that the mere fact the defendant committed the crime can ever be sufficient

proof to show predisposition. We reiterate the same caution expressed in *Jones*:

> To infer readiness and willingness from the transactions in question (as opposed to inferring it from prior occurrences) requires not merely evidence that the accused was shorn but evidence that he went all too eagerly to the shearing shed. 473 F.2d at 294 n.1.

There is ample evidence in this record that Morrison played an active role in arranging the sale and the jury could have reasonably concluded that his aggressive conduct was inconsistent with his claim of entrapment. Unlike the accused in *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), Morrison did not participate in the sale solely to help a close friend solve his drug or money problem. Morrison's attempt to take money from the transaction for himself, like his eager, effective efforts to consummate the sale, is not the kind of conduct one would expect from an innocent man entrapped by the insistent appeals of a false friend. *Cf. United States v. Principe*, 482 F.2d 60, 62 (1st Cir. 1973). The issue of the entrapment of defendant Morrison was properly submitted to the jury and we thus affirm its decision.

## III. CONTINGENT FEE

■ The court instructed the jury that if it found that Graddick was working on a contingent fee basis it must acquit the defendant Morrison.[2] Defendants Dickens and Glenos excepted to their exclusion from this facet of the charge and reurge this objection on appeal. Evidently the court did not consider Dickens and Glenos to be sufficiently connected with Graddick to be affected by his status. We pretermit any ruling on such an analysis. In light of the outcome of this trial, it is inconceivable that the defendants could have been prejudiced by the exclusion. By convicting Morrison, the jury necessarily decided that no contingent fee arrangement existed. There would not have been a different outcome if the trial judge had included the other defendants in the charge.

■ Moreover, the jury's finding of a lack of a contingent fee arrangement comports with the record. The evidence falls short of establishing that the kind of fee arrangement condemned in *Williamson v. United States*, 311 F.2d 441 (5th Cir. 1962) was present in this case. Both Graddick and agent Taylor testified that no agreement was made beforehand concerning the timing or amount of payment. Unlike the informer in *Williamson*, Graddick was not promised a specified sum of money to convict a specified suspect. The most probative evidence to establish a contingent fee arrangement existed was Agent Brown's statement that informants were generally paid on the basis of what they produce. This is insufficient to bring the case within *Williamson*. *Heard v. United States*, 414

---

2. The pertinent portion of the court's charge provided:

"With reference to Mr. Morrison, you must first determine whether Mr. Graddick was on a contingent fee basis with the Government. That has to do with the method of payment, if any, that he was to receive, including any beneficial help that he may have been promised or lead to believe that he would get with the Internal Revenue Service. "If the arrangement between Mr. Graddick, by word or by deed, expressly or inferred, was such that he was to receive benefits commensurate with whether or not a case was made against one or more of these defendants, then that becomes a contingent fee. If the evidence is such that what help, if any, or what pay, if any, he was to receive did not depend on the success or validity of whatever he did in this case, then it would not be a contingent fee.

"If there was not a contingent fee, then you go right ahead and consider the defendant, Morrison, right along with the others. If you determine that there was a contingent fee arrangement, then under the facts and circumstances of this case, I charge you that you will have to find for the defendant, Morrison, but that does not—those instructions on contingent fee do not apply to the others as to having to find for them."

F.2d 884, 886 (5th Cir. 1969). *See also United States v. Oquendo*, 505 F.2d 1307, 1310 (5th Cir. 1975).

The court's action in limiting its "contingent fee informer" instruction to the defendant Morrison was not reversible error.

Affirmed.