TYSON, Judge.
Terry Cornelius Burnette was indicted for the unlawful sale of marijuana in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment.” He was sentenced to six years’ imprisonment.
The facts of this case as presented by the State can be briefly summarized.
On the evening of May 22, 1984, Dennis Hobbs, a narcotics investigator with the Coffee County Sheriff’s Department was working undercover with the Covington County Sheriff’s Department. On that night, Hobbs and an informant named “Frankie” went to an apartment in the Timmerman Building in Andalusia, Alabama. At that time, Hobbs was wired with a transmitter. At the apartment, Hobbs and Frankie had a conversation with this appellant.[1] Thereafter, the appellant, Hobbs and Frankie left the Timmerman Building and drove to the Blue Chateau where the appellant sold Hobbs a bag of marijuana.
I
The appellant’s contention on appeal concerns the defense of entrapment.
“Entrapment occurs when state officers or persons under their control incite, induce, lure, or instigate a person into committing a criminal offense; which that person would not have otherwise committed and had no intention of committing. Johnson v. State, 291 Ala. 639, 285 So.2d 723 (1973). Where the defense of entrapment is raised, two separate issues of fact are presented: First, whether there was governmental inducement, and, second, if there was inducement whether the defendant was ready and willing to commit the act without persuasion. United States v. Jones, 473 F.2d 293 (5th Cir.1973), cert. denied, 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961 (1973); Lindsay v. State, 41 Ala.App. 85, 90, 125 So.2d 716, cert. stricken, 271 Ala. 549, 125 So.2d 725 (1960), cert. denied, 366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 392 (1961).
“The defense of entrapment is not applicable where the law enforcement officer merely affords an opportunity to one intending to violate the law. Johnson v. State, 36 Ala.App. 634, 61 So.2d 867 (1952); Boswell v. State, 290 Ala. 349, 276 So.2d 592 (1973); Mullins v. State, 56 Ala.App. 460, 323 So.2d 109, cert. quashed, 295 Ala. 412, 323 So.2d 116 (1975). ‘It is only when the Government’s deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.’ United States v. Russell, 411 U.S. 423, 436, 93 S.Ct. 1637, 1645, 36 L.Ed.2d 366 (1973). The primary focus is on the predisposition of the accused rather than on the agent’s actions. Russell, supra.
“The cases considering the defense of entrapment in prosecutions for offering or paying bribes support the conclusion that the defense cannot be successfully interposed when the accused initiates the transaction by offering or suggesting payment of a bribe, and law enforcement officers, public officials, or others to *840 whose conduct the doctrine applies, thereafter pretend to cooperate by furnishing or otherwise aiding the completion of the offense for the purpose of prosecuting the accused or obtaining necessary evidence.
“(T)he defense is established where government officials, or persons acting under their direction, for the purpose of arresting and prosecuting the accused, first request, demand, or suggest payment of a bribe from an otherwise innocent person who apparently did not previously have the intention or design to commit the offense, and the accused, either because of fears of official retaliation or the persuasion and representation of the agents, was lured or induced into committing the offense. Annotation: 69 A.L.R.2d 1396, 1400, 1401 (I960).”
Tyson v. State, 361 So.2d 1182, 1185-86 (Ala.Crim.App.1978).
“ ‘A defendant who seeks to raise a defense of entrapment must first come forward with evidence sufficient to raise a jury issue ‘that the government’s conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.’ United States v. Dickens, 524 F.2d 441, 444 (5th Cir.1975). A defendant will be considered to have met this burden if he produces ‘any evidence’ that governmental conduct created such a risk, Pierce v. United States, 414 F.2d 163 (5th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), but evidence that the government agent sought out or initiated contact with the defendant, or was the first to propose the illicit transaction, has been held to be insufficient to meet the defendant’s burden. United States v. Humphrey, 670 F.2d 153 (11th Cir.1982); United States v. Hill, 626 F.2d 1301 (5th Cir.1980). The defendant must demonstrate not merely inducement or suggestion on the part of the government but ‘an element of persuasion or mild coercion.’ United States v. Hill, supra. The defendant may make such a showing by demonstrating that he had not favorably received the government plan, and the government had had to ‘push it’ on him, United States v. Hammond, 598 F.2d 1008 (5th Cir.1979), or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate. United States v. Timberlake, 559 F.2d 1375 (5th Cir.1977). When the defendant makes such a showing, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged. United States v. Dickens, supra.
“Appellate review of a jury decision on entrapment is directed to whether the evidence was sufficient to enable a reasonably-minded jury to reach the conclusion that the defendant was predisposed to take part in the illicit transaction. United States v. Dickens, supra.”[2]
United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir.1985). See also, Williams v. State, 409 So.2d 949 (Ala.Crim.App.1981).
Although the appellant did not testify at trial, he met his burden of proof on the issue of entrapment by the testimony of one defense witness and defense counsel’s cross-examination of the State’s witnesses. The following is a cross-examination of witness Hobbs.
“BY MR. TAYLOR:
“Q. How much did you say you paid for the marijuana, Mr. Hobbs?
“A. I gave him a twenty dollar bill.
“Q. Is that what you paid for the marijuana, twenty dollars?
“A. That’s what I gave him.
“Q. Is that — I’m not trying to trick you, is that what you paid for the marijuana, twenty dollars? Did you get any change?
“A. I don’t recall. It’s been about a year and a half.
*841 “Q. All right. Now, in previous testimony, you have testified that you didn’t hear anything said about coke or cocaine in this conversation in that apartment, didn’t you? “A. That’s correct. I did not.
“Q. Okay. Now you remember it after you have had a chance to hear this tape, hadn’t you?
“A. That’s correct. They were ...
“Q. I didn’t ask you anything else. Let me ask you this. Who was that that said I have some coke? Was that Frankie?
“A. That would have been Frankie.
“Q. Was Frankie? Who brought Frankie to Covington County?
“A. I did.
“Q. Who took Frankie into that apartment?
“A. I did.
“Q. Who did Frankie assist in making this buy?
“A. Myself.
“Q. All right. Now, is that when you said that’s some good shit? Is that when you said that, that it’s some good shit?
“A. No, I was referring to the marijuana.
“Q. Oh, were ya’ll smoking at that time?
“A. No. He was frying fish.
“Q. Oh, you said that’s some good shit, you weren’t talking about the coke that Frankie had he was offering them, right?
“A. I did not see any coke, sir.
“Q. Did you hear Frankie offer them coke?
“A. Not at that time, no, sir.
“Q. Well, you heard it on the tape?
“A. I heard it on the tape. I didn’t hear
[[Image here]]
“Q. Okay. Now you know that that was done though, right?
“A. I heard that on tape, yes, sir.
“Q. Okay. That’s what I thought. Okay. And you said, herbs, reefer, that’s marijuana, right?
“A. That’s correct.
“Q. You said — this was after the conversation about the coke. You says, we need some herbs, some reefer, we need to get high, didn’t you?
“A. That’s correct.
“Q. All right. We are going to make it worth your while? Is that right?
“A. Correct.
“Q. Did I hear cocaine mentioned right after you said that again? Something about some chemicals? Was that Frankie again?
“A. It had to been Frankie or the Defendant, yes, sir.
“Q. Yes? You said can you score us a little bit? Were you talking about reefer or cocaine or what?
“A. Marijuana.
“Q. Okay. You said we will take a nickle or dime or I’ll give you twenty dollars for a dime, is that right?
“A. That’s correct.
“Q. Now, Officer — excuse me. You are not an officer anymore, are you?
“A. No, sir, I’m not.
“Q. When you first started this conversation with Terry, the first thing Terry told you is, I don’t mess around with that stuff no more, didn’t he?
“A. Told Frankie that.
“Q. All right. He continued telling you that after you were making all these statements, you will make it worth your while, do us a favor, right?
“A. Correct.
“Q. Okay. You went through the whole spill. He is telling you all the time, I don’t mess with that stuff. We don’t have any here in the apartment, didn’t he tell you that?
“A. That’s correct. He did.
“Q. Right. Later on in the tape, you wanted to know if he knew where you could get some chemicals, some speed or heroin, is that right?
“A. Amphetamines, yes sir.
*842 “Q. All right. Then something about going to Bubba’s house, ya’ll going to go to Bubba’s house and get the stuff, now what was that, the cocaine that we were talking about earlier?
“A. Yeah, Bubba Wilson.
“Q. Right. Going over there to get the cocaine to take back to these guys, right? “A. That’s correct.
“Q. All right. Okay. And that’s what you were talking about, go get the mood, that was you, right? Go and get the mood?
“A. I would have to hear that statement again.
“Q. Well, what I’m asking you, Mr. Hobbs, is, in previous testimony, you had testified that there was no offer of cocaine. ...
“MRS. LOGGINS: We object to the form of that question ...
“MR. TAYLOR: This is cross-examination and we would ...
“MRS. LOGGINS: Your Honor, we object. He has failed to lay a proper predicate ...
“THE COURT: Overruled.
“Q. Didn’t you in previous testimony testify before a jury that there was no offer of cocaine to these guys at all? Did you testify to that or not?
“A. I did.
“Q. All right.
“A. That’s true.
“Q. That’s what I’m asking you. You know now that there was an offer of cocaine. Ya’ll were supposed to go get it and take it back to these guys right here, weren’t you?
“A. That was the statement that was made, yes, sir.
“Q. All right. Okay. Now, when did you start — how much of this did ya’ll smoke?
“A. I didn’t smoke any of it.
“Q. Ya’ll didn’t smoke any of this?
“A. Uhuh.
“Q. Ya’ll didn’t light up any marijuana and say — didn’t you at the end of the tape say this is some good stuff or something like that?
“A. I did.
“Q. What were you doing?
“A. Looking at the quantity — quality of it, the
“Q. Oh. Were you smelling it?
“A. Yeah, smelling of it.
“Q. You weren’t smoking it though?
“A. No, sir.
“Q. Okay. So, at the end of all this, I believe you said — you told Mrs. Loggins you don’t recall going back to the Timmer-man Building, is that correct?
“A. That’s correct.
“Q. Well, I mean — you are grown man, wouldn’t you realize or recognize whether you went to the Timmerman Building or not or whether you did or whether you didn’t?
“A. Yes, sir, I should.
“Q. Well, do you need some time to think about it?
“A. No, sir, I do not.
“Q. Well, do you remember going back over there?
“A. No, sir, I do not.
“Q. Do you know whether you did or whether you didn’t?
“A. I do not know that.
“Q. All right. Now, Terry told you several times, I don’t fool around, did he not?
“A. That’s correct.
“Q. Mr. Hobbs, didn’t you push him into going and make the buy for you?
“A. He got it for us.
“Q. All right.
“MR. TAYLOR: Thank you. That’s all.” (R. 37-45).
The sole defense witness, Bernard Stall-worth, testified that the appellant and Pete Short were at his apartment in the Timmer-man Building frying fish when Hobbs and Frankie came to the door on the night in question. The two asked to speak to the *843 appellant. Hobbs and Frankie begged the appellant to sell them some marijuana. The appellant told them that he didn’t fool around with it. Hobbs and Frankie kept “bugging” the appellant and he continued to resist.
Frankie then said that they had some cocaine and they needed some marijuana. The appellant then agreed to go obtain some marijuana for Hobbs and Frankie. The three then left. Shortly after the appellant returned to Stallworth’s apartment, Hobbs also returned with a bag of cocaine and gave it to the appellant.
The above evidence certainly presents a jury question as to whether “the Government’s conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.” Andrews, supra. The course of conduct leading to the sale of the marijuana began with the approach of the appellant by Hobbs and Frankie who requested the appellant to sell them some marijuana. In this case, Hobbs and Frankie were not just providing the appellant with the opportunity to sell them marijuana. The appellant obtained and sold the marijuana to them only after their repeated urgings and their offer of cocaine.
Thus, since the appellant met his burden on this issue, the State was then required to show, beyond a reasonable doubt, predisposition on the part of the appellant.
“By ‘predisposed’ is meant that the accused is “presently ready and willing to commit the crime ... (T)he predisposition which must be shown by the prosecution is a state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged.” [United States v.] Burkley, 591 F.2d [903] at 916 [D.C.D.C.1978]. ‘(Predisposition is, by definition, “the defendant’s state of mind and inclinations before his initial exposure to government agents ” ’ United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir.1983).”
Chillous v. State, 441 So.2d 1055, 1057 (Ala.Crim.App.1983).
We do not find the State proved the appellant was predisposed to commit this offense beyond a reasonable doubt. Even the State’s main witness, Hobbs, admitted that the appellant did not initially want to sell the marijuana. The appellant did not have marijuana on him or at Stallworth’s apartment. Hobb’s and Frankie’s repeated urgings and their offer of cocaine induced the appellant to commit this offense which he would not have otherwise done. Thus, the State failed to meet its required burden of proof here.
Therefore, the judgment of the trial court is due to be and is, hereby, reversed and rendered.
REVERSED AND RENDERED.
BOWEN, P.J., and McMILLAN, J., concur.
PATTERSON, J., dissents with opinion in which TAYLOR, J., joins.

. This conversation was recorded and played for the jury at trial. However, this court could ascertain little of the conversation from the recording.

. ‘‘[T]he doctrine of entrapment as a matter of law did not survive the Supreme Court’s opinion in Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) ..."Andrews, supra at 1499.