956 F.2d 271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanley MITCHELL, Defendant-Appellant.
 No. 91-1002.
 United States Court of Appeals, Sixth Circuit.
 March 9, 1992.
 
 Before NATHANIEL R. JONES, MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Stanley Mitchell appeals his conviction for (1) distributing heroin, in violation of 21 U.S.C. § 841(a)(1), and (2) the unlawful use of a telephone, in violation of 21 U.S.C. § 843(b). Following a jury trial, the judge sentenced Mitchell to fourteen years imprisonment on the first count and four years imprisonment on the second count. The judge ordered Mitchell to serve the sentences concurrently. On appeal, Mitchell claims that he was entrapped by the government's informant. For the reasons described below, we affirm the judgment of the district court.
 
 
 2
 The facts essential to this appeal are numerous and involved. Our story begins in late December 1989, at which time Mitchell was approached by an individual he knew as "Sam" regarding a heroin deal. Sam asked if Mitchell would help him replace a load of bad heroin Sam had delivered to a customer. Mitchell initially refused to help Sam. According to Mitchell, Sam was not a very close friend.
 
 
 3
 Unbeknownst to Mitchell, Sam was also a government informant. There is some confusion about Sam's capacity as a government informant during his initial meetings with Mitchell. Evidence at trial indicated that Sam first brought Mitchell to the government's attention in late December. At this point, however, discussions between representatives of the Drug Enforcement Agency and Sam were informal. Apparently, representatives of the agency made general statements to Sam to the effect that they only wanted information on persons in the Detroit area who were selling significant amounts of heroin or cocaine. It does not appear that the Agency coached or instructed Sam to initiate a drug deal with Mitchell or any other specific person.
 
 
 4
 Sam telephoned Mitchell shortly after Christmas and repeated his request to Mitchell. Mitchell again refused to arrange a sale for Sam. Mitchell claimed that Sam telephoned him to discuss a possible heroin deal on at least four other occasions. It was only during the fourth phone conversation--at which time Sam apparently told Mitchell he would lose his electricity and heat if the heroin deal did not go through--that Mitchell graciously agreed to assist Sam in the procurement of more heroin.
 
 
 5
 On February 14, 1990, during one of the phone calls between Sam and Mitchell, Sam introduced an undercover agent to Mitchell. Mitchell testified that he believed the undercover agent was the disgruntled customer who had received the bad heroin from Sam. Thereafter, Mitchell and the agent engaged in a series of telephone conversations concerning possible drug transactions. In the course of these conversations, Mitchell discussed the possibility of selling cocaine and heroin to the agent. In addition, Mitchell mentioned the possibility of introducing the agent to a group of Nigerian students in Chicago who were selling high-grade heroin.
 
 
 6
 On February 26, 1990, Mitchell and the undercover agent discussed a sale of one ounce of "China White" heroin to the agent for $7,500. On February 27, 1990, Mitchell told the agent he had a sample of the heroin. The agent went to Mitchell's house and Mitchell gave him a sample of heroin. On February 28, 1990, the agent attempted to purchase heroin from Mitchell but was unable to do so because not all the heroin had been delivered to Mitchell's house. On March 1, 1990, Mitchell delivered approximately one ounce of heroin to the agent. In exchange, the agent gave Mitchell $7,150, a lesser price than originally agreed upon because the heroin was half a gram short of the amount Mitchell was supposed to have delivered.
 
 
 7
 After the delivery, Mitchell contacted the undercover agent three more times. On each occasion, Mitchell would initiate contact with the agent by paging the agent on his electronic beeper. On March 2, 1990, Mitchell contacted the agent to determine if the agent was satisfied with the heroin. On March 5, Mitchell spoke with the agent again to determine if he was interested in purchasing cocaine. Then, on March 6, 1990, Mitchell paged the agent to report that a kilogram of cocaine would cost $26,000.
 
 
 8
 Throughout all of the conversations between the agent and Mitchell, Mitchell and the agent used code language to refer to various aspects of their drug transactions. This is not Mitchell's first conviction on drug charges.
 
 
 9
 Mitchell argues that the government's permitting the informant to make repeated attempts to enlist Mitchell in the purchase of narcotics was improper and constitutes entrapment. Mitchell argues that he was not predisposed to violate the law but only did so because the informant's constant "pressuring."
 
 
 10
 Entrapment is an affirmative defense. In order to successfully plead the entrapment defense, the defendant must establish two elements. First, the defendant must show government inducement of the crime. Second, the defendant must show that he lacked a predisposition to engage in the criminal conduct. United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991). Inducement can be shown by demonstrating the defendant was unreceptive to the government's plan or that the government had to "push" the plan on him. United States v. Hammond, 598 F.2d 1008, 1011 (5th Cir.1979). A defendant must show predisposition beyond a reasonable doubt and, when making this determination as a matter of law, the court must view the evidence in the light most favorable to the prosecution. United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984).
 
 
 11
 Analysis of the defendant's predisposition focuses on the " 'defendant's state of mind before his initial exposure to government agents.' " McLernon, 746 F.2d at 1112 (quoting United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir.1983)). Relevant factors for determining predisposition include (1) the defendant's character or reputation, including prior criminal record, (2) whether the government initially suggested the criminal activity, (3) whether the defendant was engaged in the criminal activity for profit, (4) whether the defendant was reluctant to commit the offense, and (5) the nature of the government's inducement or persuasion. Id. The law distinguishes between the "unwary innocent" and the "unwary criminal"--the former is not considered predisposed to criminal conduct while the latter is. Barger, 931 F.2d at 366 (the unwary criminal is one who readily avails himself of the opportunity to engage in criminal conduct); compare with United States v. Dickens, 524 F.2d 441, 444 (5th Cir.1975) (courts must determine whether there exists a substantial risk that the government's conduct was such that the offense would be committed by a person other than one ready to commit it).
 
 
 12
 Here, the only "inducement" offered by the government, through its informant, was an opportunity to help Sam. Mitchell would have this court believe that
 
 
 13
 ... repeated telephone calls from Sam were a form of coercion that played upon the Defendant's friendship with Sam, to induce a crime. Had it not been for the pleas for help from Sam, Stanley Mitchell would not have become involved in the transaction at all.
 
 
 14
 The district court properly rejected this disingenuous argument. First, Mitchell admits at trial that Sam was not a very close friend. It is difficult to imagine "helping" someone by arranging an illegal drug deal, let alone to provide such "help" to someone who is not a close friend. Second, Mitchell's own statements demonstrate that he was aware that he could gain financially on the deal because it would help him get "out of the hole." Third, Mitchell eagerly attempted to solicit other illegal drug dealings with the agent while the heroin deal was being transacted. For example, in his first conversation with the agent, Mitchell volunteered to travel to Chicago with the agent to introduce him to Nigerian students selling heroin. In later conversations, Mitchell identified other sources for heroin and proposed to arrange a sale of cocaine to the agent. Finally, Mitchell's use of drug code language, which indicated a significant familiarity with the drug distribution network, and his prior conviction on drug charges give ample weight to a jury finding that he was predisposed to the criminal conduct for which he was convicted.
 
 
 15
 All these factors support a finding that Mitchell qualifies as an "unwary criminal" and not an "unwary innocent." Barger, 931 F.2d at 366. The only point in Mitchell's favor--and it is a minor one--is that the initial suggestion for the heroin deal came from the government's informant. All the events that occurred thereafter were such that the jury could reasonably conclude that Mitchell was not reluctant to engage in the criminal activity. In fact, the evidence demonstrates that Mitchell, once given the opportunity to engage in criminal conduct, see Barger, sought to seize upon the contact with a new buyer, in this case a government agent, in order to cultivate future sales.
 
 
 16
 For the reasons described above, we affirm the district court's judgment.