The appellant, Oliver Jones, Jr., was convicted of five felony offenses: three instances of bribery, for which he was sentenced to ten years' imprisonment in each case; trafficking in cocaine, for which he was fined $50,000 and was sentenced to life imprisonment; and the unlawful distribution of cocaine, for which he was sentenced to 15 years' imprisonment. This is a direct appeal from those convictions.
 I.
The appellant, who is black, argues that the prosecutor was guilty of racial discrimination in the use of his peremptory strikes in selecting the jury in violation of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Fifteen of the 42 members on the jury venire were black. The State used six of its 15 peremptory strikes against blacks. The record does not show how many blacks, if any, actually sat on the jury. Except for those instances where defense counsel objected, the voir dire of the venire is not contained in the record. In this case, we cannot conclude that "the sheer weight of statistics . . . raises a strong inference of racial discrimination requiring clear and cogent explanations by the State in rebuttal." Ex parte Yelder, 603 So.2d 981 (Ala. 1992). See also Harrell v. State, 571 So.2d 1270 (Ala. 1990).
Without making any finding that the appellant had established a prima facie case of racial discrimination, the trial court, because "[t]here were strikes of blacks" (R. 18), required the prosecutor to state his reasons for striking the six black veniremembers.[1] In response, the prosecutor gave the following reasons: *Page 468 
 1. No. 4 — "[T]he sheriff's office had problems with drug charges against him." R. 18. This involved "problems" with drugs and did not involve convictions. R. 22.
 2. No. 5 — "[S]he has a brother-in-law that came out of the voir dire that was convicted of marijuana." R. 18.
 3. No. 11 — "[T]he sheriff's office had trouble with misdemeanor convictions in her family." R. 19.
 4. No. 21 — "[H]er father has been charged with misdemeanor offenses in court here, the sheriff's office advises me." R. 19.
 5. No. 33 — "[O]n the sheriff's office he has many misdemeanor cases in court." R. 19.
 6. No. 41 — "[S]he has connections with the defendant, says she went to church with him and had known him all his life." R. 19-20.
The prosecutor obtained his information on the veniremembers from the sheriff's department. The prosecutor explained that "[w]e submit a list to the sheriff's department, and ask them if they know these individuals in the community where they live, and would they provide us information." R. 23.
In regard to veniremember No. 4, defense counsel complained because the prosecution failed to demonstrate that this "Carter" was the same Carter that had prior convictions involving drugs. The prosecutor responded that his information was that this veniremember had "drug problems" and not "convictions" so that the veniremember's failure to respond on voir dire when the venire was questioned about convictions was not significant.
With regard to veniremember No. 5, defense counsel stated that during voir dire this veniremember stated that the fact that her brother-in-law was on probation for a drug charge "wouldn't have anything to do with this case, that it wouldn't enter into it in any way." R. 24. In connection with No. 11, defense counsel objected because there was no showing of the degree of family relationship involved. R. 24. The appellant does not challenge the prosecutor's strike of veniremember No. 41.
The trial court denied the Batson objection, finding that the reasons given by the prosecutor were "race-neutral reasons." R. 26. "Where, as in this case, the trial court requires the prosecutor to state his reasons for his peremptory strikes without first requiring the defendant to establish a prima facie case of discrimination, this Court will review the reasons given by the prosecutor and the trial court's ultimate decision on the Batson motion without any determination of whether the defendant met his burden of proving a prima facie case of discrimination." McLeod v. State, 581 So.2d 1144,1154-55 (Ala.Cr.App. 1990).
Under the circumstances presented here, the prosecutor's strike of veniremember no. 4 on the ground that the sheriff's department had had "drug problems" with that person was racially neutral. In Walker v. State, 611 So.2d 1133
(Ala.Cr.App. 1992), this court made the following observations:
 "The most troubling reasons for the state's strikes are that a veniremember's relative had a recorded criminal history (such as arrests, prosecutions, or convictions) and that he or she did not respond when asked on voir dire whether a relative had been prosecuted for a felony. While these reasons are, under some circumstances, valid race-neutral reasons for a strike, see, e.g., Powell v. State, [Ms. 91-143, May 29, 1992] [608] So.2d [411] (Ala.Cr.App. 1992); Lynn v. State, 543 So.2d 704 (Ala.Cr.App. 1987), aff'd, 543 So.2d 709
(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989); under other circumstances, they may be a sham or pretext for discrimination, see Ex parte Bird, 594 So.2d 676, 683 (Ala. 1991). In Bird, the Alabama Supreme Court held that 'the failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination' and that 'if the prosecut[or] thinks that a veniremember *Page 469 may be related to a former defendant, [he] must ask the veniremember.' Id. (Citations omitted; emphasis added). The Bird court also noted that 'a simple question directed to the veniremember could have dispelled any doubt about a possible relationship.' Id. (Emphasis added). A 'prosecutor's self-imposed ignorance [should not] preclude a Batson claim.' Id. (quoting, Note, Batson v. Kentucky and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection, 74 Va.L.Rev. 811, 827 (1988)). Compare Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App. 1991) (wherein the court, in holding that the defendant may not cross-examine jurors or go behind the prosecutor's information to determine if such information was true, stated that a 'prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral').
 "Based on this rationale, even assuming that the reasons given by prosecutor for his strikes of venirepersons nos. 117, 126, 34, 36, 35, and 98 based on their alleged relationship to alleged relatives with alleged recorded criminal history or on their failure to answer the related question on voir dire are true, we cannot conclude that those reasons are race neutral or facially valid. None of these veniremembers responded affirmatively when asked if any of their family members had been prosecuted for committing a felony (nor did any white veniremembers. The prosecutor never sought to confirm or refute his assumptions with further questioning. Thus, we conclude that the voir dire examination is void of meaningful questions directed to the black veniremembers in regard to the particular reasons given for striking them.
 "A prosecutor cannot simply presume, without further questioning to 'dispel any doubt,' that a veniremember, who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary. [emphasis added] See Bird. See also Harrell v. State, 571 So.2d 1270, 1272 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (wherein the court noted that '[t]he record fails to show that any of the five blacks responded to the prosecutor's questions in such a way as to give insight into why they were stricken'); Guthrie v. State, 598 So.2d 1013 (Ala.Cr.App. 1991), cert. denied, 598 So.2d 1020 (Ala. 1992) (trial court's ruling reversed for a total lack of voir dire questioning to support proffered reasons, some of which were based on alleged relationships with persons charged or convicted of crimes); Jackson v. State, 557 So.2d 855, 856 (Ala.Cr.App. 1990) (trial court's ruling reversed where prosecutor failed to ask questions on voir dire 'relating to the explanation he gave for his strikes of any black veniremember'); Avery v. State, 545 So.2d 123, 127
(Ala.Cr.App. 1988) (in addressing the reason that there had been other defendants in prior cases with the same last name, the court observed that the 'prosecutor could have resolved her suspicions by asking a few simple questions on voir dire,' and that the [Ex parte] Branch court found that 'intuitive judgment or suspicion by the prosecutor is insufficient to rebut the presumption of discrimination,' 526 So.2d [609] at 623); Floyd v. State, 539 So.2d 357, 362 (Ala.Cr.App. 1987) (mere suspicion of relationship between venireperson and previously prosecuted defendant with same surname was held insufficient; prosecutor could have easily ascertained what relationship, if any, existed by asking a simple question on voir dire); Acres v. State, 548 So.2d [459] at 473 [Ala.Cr.App. 1987] (striking of veniremember on belief that prosecutor's records showed her to have a conviction not upheld where a review of the records did not support this conclusion; a question on voir dire could have clarified this discrepancy).
 "Here, the trial court had 'nothing on which to make the required "sincere and reasonable effort to evaluate the evidence and explanations based on the circumstances as [it knew] them," ' Bird, 594 So.2d at 683 (quoting Branch, *Page 470 
526 So.2d at 624), except the prosecutor's unsupported assertion that each veniremember struck was related to someone prosecuted for a felony in the face of each veniremember's implied denial of any such relationship. We find that the prosecutor's rationale 'in substance, amounted to a "mere general assertion" of nondiscrimination,' 594 So.2d at 683, especially in light of each veniremember's silence when asked the question intended to elicit any relationship. Because the prosecutor's suspicion of the veniremember's relationship with someone with a recorded criminal history or the venireperson's failure to answer the related question on voir dire was the sole basis for the prosecution's striking of venirepersons nos. 126, 34, and 35, this case must be reversed and the case remanded for a new trial. See Bird, 594 So.2d at 683 ('one unconstitutional peremptory strike requires reversal'); Harrell v. State, 555 So.2d 263 (Ala. 1989); Parker v. State, 568 So.2d 335 (Ala.Cr.App. 1990)." (Footnote omitted; emphasis in original except where indicated.)
Our holding in Walker does not apply here because in this case the prosecutor had information from the sheriff's department concerning the basis for each peremptory strike and because the prosecutor did not "simply presume, without further questioning to 'dispel any doubt,' that a veniremember, who is under oath, did not answer a question truthfully merely because the prosecutor has hearsay evidence to the contrary." Walker, supra.
Here, the prosecutor did not exercise a "same name" strike. There is no indication that the sheriff's department was having drug problems with someone named "Carter" as opposed to this particular veniremember. Here, there was more than the "mere suspicion" of relationship. See Ex parte Bird, 594 So.2d 676,683 (Ala. 1991) (a "prosecutor's self-imposed ignorance [should not] preclude a Batson claim") (quoting Note, Batson v.Kentucky and the Prosecutorial Peremptory Challenge: Arbitraryand Capricious Equal Protection, 74 Va.L.Rev. 811, 827 (1988)).Compare Smith v. State, 590 So.2d 388, 390 (Ala.Cr.App. 1991) (wherein the court, in holding that the defendant may not cross-examine jurors or go behind the prosecutor's information to determine if such information was true, stated that a "prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral").
The prosecutor did strike veniremember no. 5 because she had a brother-in-law that had a marijuana conviction even though that veniremember indicated on voir dire that that would not "have anything to do with this case." However, we know of no requirement that the prosecutor must be bound by and must accept a veniremember's response at face value.
 "Any statement or answer by a juror during voir dire that is false, equivocal or raises a question about a juror's ability to accept the type of evidence that will be presented, or a juror's ability to be fair and impartial, also constitute permissible explanations for purposes of a Batson challenge. This remains true even when that juror states that he can set aside those experiences in his background and be fair and impartial to both of the parties.[141]
Puiszis, "Edmonson v. Leesville Concrete Co.: Will thePeremptory Challenge Survive its Battle with the EqualProtection Clause?" 25 J.Mar.L.Rev. 37, 64 (1991) (other footnotes omitted). See also United States v. Briscoe,896 F.2d 1476, 1488 (7th Cir.), cert. denied, 498 U.S. 863,111 S.Ct. 173, 112 L.Ed.2d 137 (1990) (reason that *Page 471 
juror who had previously worked as a youth supervisor at a correctional center might have tendency to be sympathetic toward defendants was a valid race-neutral reason despite juror's statement that her experience would not prejudice her, and that she could be fair to both sides).
 "Numerous reviewing courts have addressed the 'race-neutrality' of explanation asserted to justify the exercise of a peremptory challenge. The closer an explanation comes to a valid 'challenge for cause,' the more likely a court will find that the explanation is racially-neutral. For example, courts have consistently found that a prospective juror's criminal conviction, or prior arrest by the same police agency in the case on trial, are racially neutral explanations which justify the removal of that juror. Similarly, the fact that a juror's relative had been a defendant in an unrelated criminal trial, or that a juror had a reputation in the community for unlawful activities, have been held valid explanations for the exercise of a peremptory challenge.
". . . .
 "Any experiences in a juror's background or that of a family member that might tend to cause prejudice toward one of the parties are also valid explanations for the use of a peremptory challenge."
25 J.Mar.L.Rev. at 59-60, 61.
For the reasons stated above, we find the prosecutor's strikes of veniremembers no. 11, no. 21, and no. 33 on the grounds that the veniremember or a member of the veniremember's family had misdemeanor charges or convictions were also racially-neutral.
 II.
The State presented a prima facie case that the appellant was guilty of the crime charged. We reject the appellant's contention that he established entrapment as a matter of law.
 "This court has held that the doctrine of entrapment as a matter of law did not survive the Supreme Court's opinion in Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113
(1976); United States v. Struyf, 701 F.2d 875, 877
n. 6 (11th Cir. 1983), so appellant's first claim must be rejected." United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986).
Here, the State's evidence viewed in its most favorable light abundantly demonstrates that the appellant was not coerced, and that he was predisposed to commit the charged offenses. There was evidence that the appellant had a reputation as a "coke drug dealer" (R. 146); that it was the appellant who initially offered to become an informant; and that the appellant offered the police officer money in exchange for "information relating to narcotics enforcement in the area of Headland and Dothan, specifically," R. 147; and that that offer was "totally unsolicited." R. 315.
 "A defendant who seeks to raise a defense of entrapment must first come forward with evidence sufficient to raise a jury issue 'that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.' United States v. Dickens, 524 F.2d 441, 444 (5th Cir. 1975). A defendant will be considered to have met this burden if he produces 'any evidence' that governmental conduct created such a risk, Pierce v. United States, 414 F.2d 163 (5th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425
(1969), but evidence that the government agent sought out or initiated contact with the defendant, or was the first to propose the illicit transaction, has been held to be insufficient to meet the defendant's burden. United States v. Humphrey, 670 F.2d 153 (11th Cir. 1982); United States v. Hill, 626 F.2d 1301 (5th Cir. 1980). The defendant must demonstrate not merely inducement or suggestion on the part of the government but 'an element of persuasion or mild coercion.' United States v. Hill, supra. The defendant may make such a showing by demonstrating that he had not favorably received the government plan, and the government had had to 'push it' on him, United States v. Hammond, *Page 472 598 F.2d 1008 (5th Cir. 1979), or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate, United States v. Timberlake, 559 F.2d 1375 (5th Cir. 1977). When the defendant makes such a showing, the burden shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged. United States v. Dickens, supra. In demonstrating predisposition, the government is not restricted to using past offenses or reputation evidence. Id. at 445. Evidence of predisposition may also include the readiness or eagerness of the defendant to deal in the proposed transaction, id.; United States v. Jones, 473 F.2d 293 (5th Cir. 1973), or post-crime statements such as 'if you need more, I'll be here,' United States v. Dickens, supra; United States v. Jenkins, 480 F.2d 1198 (5th Cir. 1973). Appellate review of a jury decision on entrapment is directed to whether the evidence was sufficient to enable a reasonably-minded jury to reach the conclusion that the defendant was predisposed to take part in the illicit transaction. United States v. Dickens, supra."
United States v. Andrews, 765 F.2d 1491, 1499 (11th Cir. 1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789
(1986).
 "The defense of entrapment is not applicable where the law enforcement officer merely affords an opportunity to one intending to violate the law. [Tyson v. State, 361 So.2d 1182 (Ala.Cr.App. 1978)]. It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. Id. The primary focus is on the predisposition of the accused rather than on the agent's actions. Id."
Adams v. State, 585 So.2d 161, 163 (Ala. 1991).
Although the state's evidence shows that the appellant was not "pushed" or coerced into any criminal act, the appellant testified that his actions were coerced and were in response to the officer's threat of criminal prosecution. Where there are conflicts between the testimony offered by the chief prosecution witness and the defendant on a number of key points in a prosecution for a narcotics law violation, the evidence does not establish entrapment as a matter of law. United Statesv. Walker, 720 F.2d 1527, 1539 (11th Cir. 1983), cert. denied,465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984). "When there is a contradiction in the evidence, the defense of entrapment should be resolved by the jury." Watson v. State,439 So.2d 762, 767 (Ala.Cr.App. 1983). "There was contradiction in the evidence, and the defense of entrapment was a jury question." Johnson v. State, 291 Ala. 639, 640, 285 So.2d 723
(1973).
In White v. State, 546 So.2d 1014, 1016-18 (Ala.Cr.App. 1989), this Court collected the principles governing the appellate review of the issue of the sufficiency of the evidence. Applying those principles to the facts of this case, we find that the state presented a prima facie case of the crimes charged in the indictments and that the evidence supports each conviction.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] " 'The burden of persuasion is initially on the party alleging discriminatory use of peremptory challenges to establish a prima facie case of discrimination. * * * After a prima facie case is established, there is a presumption that the peremptory challenges were used to discriminate against black jurors. . . . The state then has the burden of articulating a clear, specific, and legitimate reason for the challenge. . . .' " Exparte Bird, 594 So.2d 676, 679-80 (Ala. 1991) (emphasis added).
[141] "See Adams v. State, 740 S.W.2d 60 (Tex.Ct.App. 1987). InAdams, a prospective juror stated she could disregard her friendship with the defendant's mother and would not allow that relationship to affect her deliberations. The court's holdingimplicitly establishes that the prosecutor was entitled todisbelieve the prospective juror, and the prospective juror'sdisclaimer did not establish that the attorney excusing thejuror had unacceptable motives. The court held the exclusion was proper. Id. at 62. See also People v. Hope,137 Ill.2d 430, 148 Ill.Dec. 252, 269, 560 N.E.2d 849, 866 (1990) (prospective juror stated unsolved crime might affect her impartiality, and was properly excluded despite quick self-correction), vacated on other grounds [___ U.S. ___],111 S.Ct. 2792 [115 L.Ed.2d 966] (1991)."